## DAY, GASKIN & COMPANY v. JEFFORDS.

Where under the terms of a contract reciprocal duties are imposed upon the respective parties, and the ability upon the part of one to perform is dependent upon performance by the other, the former will be excused from compliance if, in consequence of the non-performance of the latter, he become unable to perform.

Submitted October 27, — Decided November 27, 1897.

Foreclosure of lien. Before Judge Sweat. Coffee superior court. March term, 1897.

E. D. Graham and Quincy & McDonald, for plaintiffs in error.

Leon A. Wilson and Ward & Smith, contra.

ATKINSON, J. The parties to this controversy entered into a contract of which the following is a copy.

"State of Georgia, Coffee County. This agreement entered into on the 23rd day of July, eighteen hundred and ninety-six, between S. V. Jeffords of the County of Ware and State aforesaid, and Day, Gaskin & Co. of the County of Coffee and State aforesaid: The said S. V. Jeffords agrees to deliver on the logway at Day, Gaskin & Co.'s mill, near the 86 mile-post on the B. & W. R. R., all of his sawmill timber that he bought from Hiram Sears Sr., that will measure one hundred and twenty-five feet to the tree or stick and upwards; for which they agree to pay S. V. Jeffords four dollars and a half per thousand, to be paid for as they get their returns for their lumber. The said S. V. Jeffords agrees to deliver eight thousand feet per day, or not less than eight thousand feet nor over twelve thousand feet per day, but is to deliver two hundred thousand feet per month. Scrivner measurement to be taken in measuring all logs. All logs to be measured at the little end the narrow way. Not to be measured through the shivers

and hollows on the sides. The bark on one side to be allowed in the measurement, and throwed off on the other. Nothing to be deducted for crooks in the logs. The fractional parts of an inch in measuring logs is to be delivered as follows: For instance, a log measuring 15 inches and over $15\frac{1}{2}$, then it is to be counted 16 inches, and if it should measure less than $15\frac{1}{2}$, then it is to be counted 15 inches. And all logs measuring $15\frac{1}{2}$ exactly, half of all such will be in favor of the seller, and half in the buyer's favor. All logs are to be surveyed by a sworn surveyor to be selected by both parties, S. V. Jeffords and Day, Gaskin & Co., and each party, S. V. Jeffords and Day, Gaskin & Co., pays the surveyor each his half of the surveyor's salary, which is not to exceed thirty dollars per month. It is to be left optional with the surveyor where he surveys the logs, at the logway, in the woods, or on the logway at the mill. The surveyor is not to be instructed or interfered with by either party, S. V. Jeffords or Day, Gaskin & Co. And it shall be the duty of the surveyor to mark the diameter and length of each log at the little end and to run out the amount in each log and to run out the logs every day, and to run up each day's hauling, and to give to each party each day a copy of the same, so each party may know how much was hauled the day before. The said Day, Gaskin & Co. agrees to keep a good logway or logways, and to keep the logs rolled out of the way, so as not to detain the trucks from being unloaded within five minutes after their arrival. The said S. V. Jeffords agrees to cut the logs to suit the orders, not varying over three inches in diameter, which varying is to be over and nothing under in length or diameter. The said Day, Gaskin & Co. agrees to take such orders as will work the large and small timbers together. If either S. V. Jeffords or Day, Gaskin & Co. should fail to carry out this contract faithfully, then they are to pay all damages that should occur from their neglect to do so, unless providentially hindered. The rotten timbers is to be deducted from each log, and the sound ones paid for, and the dead logs are to be measured by heart measurement. The said Day, Gaskin & Co. agrees to saw all stringers needed for the tramroad and bridge-stuff and ties for S. V. Jeffords for two dollars per thou-

sand, and S. V. Jeffords agrees to deliver such stuff on the log-way as is for the tramroad free or charge.

"Witness:

"D. J. Musgrove.          (Signed)    S. V. Jeffords.

"J. A. Croft.                               Day, Gaskin & Co."

In pursuance of that agreement, Day, Gaskin & Company constructed the mill, and Jeffords, the other party, entered upon the performance of his agreement to furnish logs in accordance with the terms of the contract.    He had furnished logs for the mill under this contract until the plaintiffs were indebted to him in the sum of $915.00, for which Day, Gaskin & Co. had given him their due-bills.    At that time the mill of the defend-ants broke down, and they were unable to proceed with the execution of the contract from the 18th day of September until the 5th day of October next following.    In the meantime the defendants had prepared no logways at the mill sufficient to accommodate the quantity of timber which the plaintiff under-took to deliver, and for this reason he was unable, pending the idleness of the mill, to proceed with the delivery of logs in ac-cordance with his contract.    When, upon the 5th day of Octo-ber, the mill was again ready to proceed to work, the plaintiff refused to perform, and declined to furnish any more logs. He made demand for the payment of the sums alleged to be due him upon the due-bills, which was refused.    He then filed a proceeding to foreclose a lien upon the property of the de-fendants, which was met by a counter-affidavit, setting up various defenses, which may be stated as follows:    Plaintiff ought not to recover, because he is indebted to the defendants more than the amount of his claim.    About July 22, 1896, the plaintiff entered into a contract with the defendants to furnish logs for defendants' sawmill, whereby plaintiff agreed to deliver on the logway at defendants' mill all the sawmill timber that the plaintiff had bought from Hiram Sears, that would measure 125 feet or upward at the stock, at $4.50 per 1,000 feet, to be paid by the defendants as they received returns for their lumber, plaintiff having agreed to deliver said logs or trees to the amount of 200,000 feet per month.    The sawmill timber bought by plaintiff of Hiram Sears, and mentioned in

said contract, comprised all the sawmill timber on a tract of land containing about 3,000 acres; and the sawmill timber upon said land measuring 125 feet and upward at the stock amounted to about 2,000 feet per acre. Plaintiff did not comply with this agreement, and on or about September 18th, 1896, failed and refused, and still refuses, to furnish defendants with logs or timber for their said mill. Damages were claimed on account of expenses incurred by defendants in building a sawmill on the faith of the contract, but this claim was subsequently abandoned. Further, at the time plaintiff committed a breach of his contract, as aforesaid, there were about two thousand acres of the timber remaining undelivered. The actual expense of sawing the timber into lumber and placing the same on cars ready for shipment would have cost defendants $1.50 per 1,000 feet, and the lumber upon cars for shipment would be reasonably worth $8.65 per 1,000 feet. There is no other timber convenient to defendants' sawmill that may be purchased at a reasonable price, and by reason of plaintiff's failure to furnish the timber in accordance with the contract, defendants have been unable to run the mill, and it has been idle since October 5th, 1896. At the time the plaintiff committed a breach of his contract as aforesaid, defendants had on hand contracts for the delivery of about 200,000 feet of lumber, and by reason of the failure of the plaintiff to furnish defendants the timber and logs in accordance with the terms of his contract, defendants were unable to fill the orders, thereby losing the profit they would have made in the sale of the 200,-000 feet of lumber, to wit, about $500.00. By reason of the premises, plaintiff has injured and damaged defendants in the sum of $10,000.00, which sum the defendants recoup for their damages, and pray judgment for the same against the plaintiff. The defendants by amendment further alleged, that said trees, delivered at defendants' logway under said contract with plaintiff, would have been worth $6.50 per 1,000 feet, and by reason of the failure of plaintiff to comply with the contract defendants have been injured and damaged $5,000 or other large sum. Upon motion of the plaintiff, all of these defenses were stricken as being insufficient in law, and the judge directed a verdict in

favor of the plaintiff. Exception was taken to the judgment of the court directing this verdict; and while there are certain other minor errors assigned, we do not deem it necessary to consider them, for if the direction of the verdict can be sustained as matter of law, any minor errors which may have contributed to bringing about this result would not afford sufficient reason to authorize the grant of a new trial.

The direction of a verdict can never be sustained unless that verdict be absolutely demanded by the evidence, and be the only conclusion which could result, after allowing in favor of the opposite party all the reasonable inferences which might be drawn from the evidence in his favor. We do not think the court erred in striking the special defenses filed by the defendants. The contract upon which they based their right to recover imposed reciprocal duties upon both the parties. The plaintiff undertook to deliver the logs at the mill; the defendants undertook to provide for him the means by and through which he could perform this duty. Until they had performed the duty which they assumed, they had no right to expect or demand performance upon the part of the opposite party, and in order to give them a right of action against him for non-performance, the pleadings must have alleged either a performance upon their part, or an offer to perform, in accordance with the terms of the agreement, and a refusal upon the part of the plaintiff to perform. This was necessary to give them the right to recoup. Pleadings are taken most strongly against the pleader; and there being no averment of performance upon their part of the reciprocal duties imposed upon them, the presumption will be that they omitted to perform such duties. This being true, they were not entitled to demand performance of the plaintiff, or entitled to recover damages because of a non-performance upon his part. The averments of the answers may, in some respects, have been sufficiently full to have carried the case to the jury upon the measure of damages, if they had been full enough to give a right of action on behalf of defendants for the recovery of such damages. They stated the measure of damages, but did not state facts which would give them the right to recover damages. It is one thing to allege damage, and another to allege

facts which would authorize a recovery against a person for such damages. In the latter respect the answer filed by the defendants was fatally deficient. The defendants sought to take this case out of the operation of the rule which we have stated, by invoking to their aid the application of the words "providentially hindered," which will be found in the contract. We can not hold that the mere breakage of machinery constitutes a "providential hindrance." Those words have a strict legal significance, are wholly unambiguous, and parties will be presumed to have contracted rather with reference to their strict legal significance than with reference to any understanding of theirs touching the import of them. The words "providentially hindered" include such acts only as may be attributed to the act of God, and not to mere unavoidable cause such as accident resulting from, and attributable to, human conduct. If the parties, in the execution of their contract, employed the words "providentially hindered" in a conventional sense which would vary their definition from that above expressed, the defendants should have prayed a reformation of the instrument, so as to make it speak the real contract as it was understood between the parties at the time they agreed to its terms. Not having done this, the court was not at liberty to disregard the plain legal import of the terms that it employed. As long as it stood unchallenged, it was the duty of the court to enforce it as it was written. This being true, the defendants were not at liberty to invoke those words in support of their contention that they were excused from performance by the terms of the contract, and that therefore, notwithstanding their failure to perform, the obligation still rested upon the plaintiff to perform his part of the agreement. With the special defenses filed by the defendants eliminated from the record, there was no alternative but for the court to direct a verdict. It is true that a great mass of evidence was introduced by the respective parties, which was in many respects conflicting; but the main controlling facts in the case bring it within the principle, that where under the terms of a contract reciprocal duties are imposed upon the respective parties, and the ability upon the part of one to perform is dependent upon performance by the other, the former

will be excused from compliance if, in consequence of the non-performance of the latter, he become unable to perform. Under the pleadings and evidence in this case, the verdict in favor of the plaintiff was inevitable, and the judge did not err in directing a verdict.

*Judgment affirmed. All the Justices concurring.*